UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLALLAM COUNTY,

                          Plaintiff,

   v.

CBS OUTDOOR, INC.,

                          Defendant.

Case No. 3:13-cv-05782-KLS

ORDER GRANTING PLAINTIFF
CLALLAM COUNTY'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on the filing a motion for summary judgment by plaintiff Clallam County (the "County"). The parties have consented to have this matter heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 73 and Local Rule MJR 13. After having reviewed the County's motion, the response filed by defendant CBS Outdoor, Inc. ("CBS") to that motion, the County's reply thereto and the remaining record, the Court finds that for the reason set forth below the County's motion should be granted.

FACTUAL AND PROCEDURAL HISTORY

I.    The Billboards and Ordinance 694

This case involves the cancellation by the County of lease agreements for three billboards

ORDER - 1

located on real property situated on the western side of Siebert Creek Road and the northern side of Highway 101, in Port Angeles, Clallam County, Washington (the "Property"). See ECF #10, p. 8, ¶¶ 1-2; ECF #25, pp. 1-2, ¶ 4. Legally constructed in 1978, the three billboards are from 50 to 100 feet from Highway 101. See ECF #10, p. 8, ¶ 1; ECF #27, Exhibit L, 26: 5-18. In June 2000, the County enacted Ordinance No. 694 ("Ordinance 694"), which requires all "[e]xisting, legally erected, non conforming freestanding signs" to be reduced to no more than 128 square feet in area and 15 feet in height. Clallam County Code Ord. § 33.57.080(1)(a).[1] Enactment of Ordinance 694 resulted in the billboards becoming existing, legally, nonconforming freestanding signs. See id.; ECF #10, p. 8, ¶ 4.

II.    The Lease Agreements

In September 2000, the owner of the Property, Marvin Eng, entered into three separate lease agreements with Infinity Outdoor Advertising Inc. ("Infinity Outdoor")[2], authorizing Infinity Outdoor to erect and maintain three advertising displays on the Property. See ECF #1, p. 11, ¶ 9; ECF #1-2, Exhibit B. Each lease provides that the lease's term would commence on October 1, 2000, and continue for an initial period of 10 years. ECF #1-2, Exhibit B. Thereafter, the lease term is "from year to year, on the same terms, until terminated as of any subsequent anniversary of the effective date" of the lease agreement "by written notice of termination given not less than sixty days prior to such anniversary date by either the Lessor or the Lessee." ECF #1-2, Exhibit B. Each lease further provides that "[a]ll structures, displays and materials placed" on the Property by the Lessee are the property of the Lessee, and that the Lessee may remove

---

[1] Available at http://www.codepublishing.com/wa/clallamcounty/html/ClallamCounty33/ClallamCounty3357.html #33.57.080. See also http://websrv7.clallam.net/forms/ordinances/Ord694.pdf.

[2] Sometime that year, Infinity Outdoor changed its name to Viacom Outdoor Inc. ("Viacom Outdoor"). See ECF #10, p. 8, ¶ 3. In January 2006, Viacom Outdoor changed its name to CBS Outdoor Inc., and then changed it again to CBS Outdoor LLC in June 2013. See ECF #27, Exhibits F-G.

ORDER - 2

them "at any time prior to or within a reasonable time after the termination of" the lease "or any extension thereof." Id. There also is no restriction under the lease agreements on the ability of the Lessor to assign its interests thereunder, "except to a party who purchases the underlying fee title to the premises." See id.

III.     The County's Purchase of the Property

In July 2001, the County purchased the Property from Mr. Eng, thereby becoming the Lessor under the leases. See ECF #1-2, Exhibit C; ECF #25, p. 2, ¶ 6; ECF #27, Exhibit C. The Property was purchased as part of "a normal market transaction" with Mr. Eng. ECF #25, p.2, ¶ 6; see also ECF #27, Exhibits C-E. Further, the Property was bought "for the purpose of conducting wetland mitigation," and contains "three wetland areas" designated as "mitigation sites along with wetland mitigation buffers." ECF #25, p. 2, ¶ 7; see also ECF #25-1; ECF #25-8. "[I]n order to use the Property for wetland mitigation," the County must abide by a number of local, state and federal government "requirements and restrictions," including ensuring that the Property is protected "from development in perpetuity." ECF #25, pp. 3-4, ¶¶ 8-9; see also ECF #24-5, 29:20-23, 30:4-16, 31:4-6; ECF #25-5.

One such requirement is the control of "invasive weeds" such as "reed canary grass and sulfur cinquefoil," both of which "have been found on the Property . . . including in areas in and around the wetlands." ECF #25, p. 4, ¶¶ 10-11; ECF #25-8; see also ECF #24-12. Sulfur cinquefoil in particular – which is "an extremely invasive plant" – has been found in the area of the billboards, and the County has continued to engage in efforts to control its spread, as well as that of other invasive weeds. ECF #25, p. 5, ¶ 12; see also ECF #24-5, 23:21-24, 31:18-34:10, 43:3-19, 46:2-18; ECF #24-10-#24-12; ECF #25-8; ECF #27, Exhibit N, 17:6-18:22.

Another requirement is ensuring the wetland mitigation sites are "protected and that no

ORDER - 3

unauthorized dumping or other similar activities occur." ECF #25, p. 4, ¶ 10. The County has found vehicle tracks "leading from Sieberts Creek Road . . . down to at least the middle billboard and the farthest west billboard, and then . . . leading all the way across the wetland." ECF #24-5, 38:14-18, 43:3-9. This "was particularly concerning" to the County, because the tracks "had actually been doing damage in the wetland, across the actual degraded wetland basin." Id. at 38:18-21. The County also "believes that sulfur cinquefoil spread[s] along" these tracks, and thus "to limit the spread of these weeds and keep trespassers of the Property," in early 2012, it had "the Property fenced in areas where these tracks were located," which the County also believes has limited its spread. ECF #25, p. 5, ¶12; see also ECF #24-5, 42:7-8, 19-22, 43:10-14, 21-24, 46:2-18; ECF #24-12; ECF #25-8; ECF #27, Exhibit L (32:20-33:25), Exhibit M.

IV.     The Viacom Outdoor Order

        In September 2002, the County issued Viacom Outdoor "an Order to Cease and Desist, seeking to require Viacom [Outdoor] to reduce the height and size of one its other existing signs in Clallam County to bring it into conformity with" Ordinance 694. ECF #10, p. 8, ¶ 5. That sign was constructed by Viacom Outdoor in March 1993, on property located along Highway 101 and owned by two private individuals, who were also plaintiff's in the case. See Viacom Outdoor, Inc. v. Clallam County, Case No. 3:03-cv-05023-RBL, Order Granting Plaintiff's Motion for Partial Summary Judgment (ECF #26), p. 1. In December 2002, Viacom Outdoor appealed the County's Order to Cease and Desist to the County Hearing Examiner – which denied the appeal, finding the sign to be noncompliant with the County's Sign Code – and then appealed that denial to state superior court. ECF #10, p. 8, ¶¶ 7-8; Viacom Outdoor, Case No. 3:03-cv-05023-RBL, ECF #26, p. 2. In January 2003, the County removed the case to this Court. See ECF #10, p. 8, ¶ 9.

ORDER - 4

The only issue before the Court was whether the County "may require the removal of [Viacom Outdoor's] sign under Ordinance 694 without paying 'just compensation' as required by the provisions of the Scenic Vistas Act, RCW 47.42.107." Viacom Outdoor, Case No. 3:03-cv-05023-RBL, ECF #26, p. 2. The Scenic Vistas Act (the "Act") provides:

> (1) Just compensation shall be paid upon the removal of any existing sign pursuant to the provisions of any resolution or ordinance of any county, city, or town of the state of Washington by such county, city, or town if:
>
> (a) Such sign was lawfully in existence on May 10, 1971 (the effective date of the Scenic Vistas Act of 1971); or
>
> (b) Such sign was erected subsequent to May 10, 1971 (the effective date of the Scenic Vistas Act of 1971), in compliance with existing state and local law.
>
> (2) Such compensation shall be paid in the same manner as specified in RCW 47.42.102(2) for the following:
>
> (a) The taking from the owner of such sign, display, or device of all right, title, leasehold, and interest in such sign, display, or device; and
>
> (b) The taking from the owner of the real property on which the sign, display, or device is located, of the right to erect and maintain such signs, displays, and devices thereon.

RCW 47.42.107. In light of this statutory language, Judge Leighton stated in his May 2003 order granting partial summary judgment, that compliance with the County's Sign Code and its Cease and Desist Order "would require the removal of [the] existing sign." Viacom Outdoor, Case No. 3:03-cv-05023-RBL, ECF #26, p. 3. In so finding, Judge Leighton noted that regardless of whether the County permitted construction of a new sign that complied with the requirements of Ordinance 694, the existing nonconforming sign still "would first have to be removed, thereby 'taking from the owner of the real property the right to maintain such sign.'" Id. (quoting RCW 47.42.107(2)(b)). Judge Leighton thus found the plaintiffs were "entitled to just compensation as provided by RCW 47.42.107." Id.

ORDER - 5

Pursuant to a Stipulation and Order of Dismissal signed by Judge Leighton in July 2003, the County agreed to withdraw its Order to Cease and Desist. <u>Viacom Outdoor</u>, Case No. 3:03-cv-05023-RBL, ECF #30, p. 1. Viacom Outdoor also agreed to dismiss the case with prejudice. <u>Id.</u> The order of dismissal further provided that "[a] 'removal' entitling Viacom [Outdoor] to just compensation includes an order to downsize the height or area of one of its signs." <u>Id.</u> at p. 2. In addition, the County was directed to "not in the future issue orders against Viacom [Outdoor] (or its successors and assigns) to remove any of its existing signs without paying just compensation (i.e., cash) in accordance with the requirements of the State Scenic Vistas Act (RCW 47.42.107 and RCW 47.42.103)." <u>Id.</u>

V.   <u>The County's Cancellation of the Lease Terms</u>

On March 16, 2011, the County informed CBS via email that it was giving its "official notice" that it was "canceling the outdoor advertising sign leases on" the Property, and that it expected removal of the billboards "to take place in July of 2011." ECF #24-8. The County stated it was cancelling the leases because the Property had been purchased "for wetland mitigation," and needed "to expand the area of wetlands on the site." <u>Id.</u> The County notified CBS again of its intent to cancel the leases via written letter in early April 2011, wherein the same reasons for the cancellation were offered, and the same expectation that billboards would be removed by July 1, 2011, was voiced. <u>See</u> ECF #24-7.

From April through June 2011, CBS presented several counter offers to the County via email that ranged from relocating the signs to other property, to extending the existing leases for increased rent, to purchasing an easement on that portion of the Property where the signs were located. <u>See</u> ECF #10, p. 9, ¶ 14; ECF #24-7-#24-8. CBS also sent a letter to the County's Commissioners dated June 13, 2011, discussing the counter offers as well. ECF #24-7. In a letter

1   dated June 21, 2011, the County Commissioners informed CBS that it was "unable to reverse

2   [their] prior decision to cancel billboard leases on the [Property] due to the need to utilize this

3   site for wetland mitigation." Id.

4        In late August 2011, CBS sent the County an email stressing its "desire to work with the

5   County to find a mutually beneficial solution to this problem," further stating that "it appears the

6   issue of compensation for the relocation or removal of [CBS's] displays consistent with Federal

7   and State regulations has not been addressed." ECF #1-2, Exhibit D. In early December 2012,

8   the County informed the Washington State Department of Transportation ("WSDOT") that due

9   to the expiration of the leases, it did not wish WSDOT "to reissue any type of permits or

10  approvals related to" the billboards. Id. at Exhibit E; ECF #25, p. 7, ¶ 17. In response to that

11  email, WSDOT informed the County in mid-March 2013, that because "[p]roperty owner

12  consent is a requirement in order to obtain a WSDOT sign permit," and because CBS "no longer

13  had" such consent, permits for the billboards were not being renewed. ECF #1-2, Exhibit E. The

14  billboards thus were "in violation of state law," and therefore had to be removed. Id.

15       There does not appear to have been any further correspondence between the parties on

16  the billboards issue until early January 2013, when CBS sent the County a letter offering two

17  proposals to relocate the billboards, although the County asserts it has had repeated discussions

18  with CBS asking for their removal. See ECF #1, p. 12, ¶ 17, n. 3; ECF #24-6. In late March

19  2013, the Clallam County Prosecuting Attorney sent CBS a "final demand" letter, informing it

20  that if it did not remove the billboards from the Property within 60 days, the County would seek

21  to have them removed and recoup the costs therefor. ECF #1-2, Exhibit D. In early May 2013, a

22  reminder letter was sent to CBS, informing it that the County expected the billboards to be

23  removed by no later than May 21, 2013, in accordance with the "60-day window." Id. According

ORDER - 7

to the County, CBS has continued to refuse to remove the billboards, which still remain on the Property. See ECF #1-2, p. 4, ¶ 19.

VI.    Proceedings in This Case

On August 1, 2013, the County filed a complaint for declaratory relief in Clallam County Superior Court, claiming:

(1)    CBS does not have an enforceable or compensable property interest that entitles it to compensation, because the leases have expired;

(2)    the compensation provisions of the Act do not apply, because the County's demands for removal of the billboards were not made pursuant to an exercise of its regulatory power; and

(3)    the County may remove and dispose of the billboards without fear of liability, because CBS has refused to remove them.

See ECF #1-2. On September 6, 2013, CBS removed the case to this Court. See ECF #1. In its answer to the County's complaint, CBS also seeks declaratory relief, counterclaiming:

(a)    the Stipulation and Order of Dismissal signed by Judge Leighton in Viacom Outdoor is binding on the County, and requires the County to pay it just compensation for removing the billboards for the cost of removing the billboards and for the lost revenue they "would have generated were they permitted to remain on the [P]roperty for the average life of a lease";

(b)    the County requested that the billboards be removed in its regulatory capacity, and therefore is required to pay just compensation under the Act for both the cost of removal and lost revenue; and

(c)    because CBS has a property interest "in its legal nonconforming right to maintain billboards" on the Property under the Stipulation and Order of Dismissal and under the Act, and because the County's actions were regulatory in nature, those actions constitute a taking under the United States and Washington State Constitutions, thereby entitling CBS to just compensation for the costs of removal as well as lost revenue.

ECF #10, pp. 10-11, ¶¶ 17-19, 21-23, 25-28.

ORDER - 8

On October 9, 2014, the County filed its motion for summary judgment, arguing declaratory relief in its favor is appropriate because it is entitled to assert its rights as a real property owner and lessor, and CBS has no property interest beyond its expired leaseholds or compensable damages. See ECF #23. In its response, CBS argues the County must pay just compensation pursuant to the Stipulation and Order of Dismissal, because the language thereof requires such payment "any time" the County "demands removal of" one of CBS's pre-existing signs. ECF #26, p. 12. CBS further argues the County acted pursuant to the Act in demanding removal of the billboards, and thus CBS is entitled to just compensation thereunder. In addition, CBS argues the County must pay compensation for taking property in violation of both the federal and state constitutions. As the County has filed its reply to CBS's response, this matter is now ripe for the Court's consideration.[3]

## DISCUSSION

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). In deciding whether summary judgment should be granted, the Court "must view the evidence in the light most favorable to the nonmoving party," and draw all inferences "in the light most favorable" to that party. T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his or her response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e)(2).

---

[3] Although defendant requests oral argument in this matter, the Court finds such argument to be unnecessary.

ORDER - 9

If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. See id. The moving party must demonstrate the absence of a genuine issue of fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. See California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." T.W. Electrical Serv., 809 F.2d at 630.

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." Id. Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" Id. (quoting Anderson, 477 U.S. at 290); see also California Architectural Building Products, Inc., 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990).

I.      Judge Leighton's Rulings Do Not Apply

CBS's argument rests largely on its claim that the County was obligated to abide by the requirements of the Stipulation and Order of Dismissal, asserting that order prohibits the removal of *any* of its pre-existing billboards without paying just compensation. The Court does not agree, however, that this is what that order actually requires. As CBS notes, in Washington "[s]tipulated agreements are interpreted as contracts." Stephens v. Gillispie, 126 Wn. App. 375, 380 (2005);

ORDER - 10

see also Martinez v. Miller Industries, Inc., 94 Wn. App. 935, 942 (1999) ("Final judgments entered by stipulation or consent are contractual in nature."). As CBS further notes, courts in Washington "follow the objective manifestation theory of contracts," under which they "attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." Hearst Communications, Inc. v. Seattle Times, Co., 154 Wn.2d 493, 503 (2005).

Accordingly, the "intention corresponding to the reasonable meaning of the words used" in the stipulated agreement is imputed to the parties. Id. at 503-04 ("[T]he subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used."). "[U]nexpressed intentions," therefore, "are meaningless when attempting to ascertain the mutual intentions [of the parties]." Lynott v. National Union Fire Ins. Co. of Pittsburgh, Pa., 123 Wn.2d 678, 684 (1994) (quoting Dwelley v. Chesterfield, 88 Wash.2d 331, 335 (1977)); see also Hearst, 154 Wn.2d at 504 ("We do not interpret what was intended to be written but what was written."). In ascertaining the parties' intent as objectively manifested, however, courts are "to look at the contract as a whole, the subject matter and objective of the contract, the circumstances under which the contract was made, the subsequent acts of the parties and the reasonableness of the respective interpretations advanced by the parties." Butler v. Craft Eng Const. Co., Inc., 67 Wn. App. 684, 698 (1992).

As noted above, the Stipulation and Order of Dismissal prohibits the County from issuing future orders against CBS "to remove any of its existing signs without paying just compensation (i.e., cash) in accordance with the requirements of the State Scenic Vistas Act (RCW 47.42.107 and RCW 47.42.103))." Viacom Outdoor, Case No. 3:03-cv-05023-RBL, ECF #30, p. 2. CBS asserts "[t]his clause unequivocally means" the County cannot order it to remove the billboards

ORDER - 11

without paying it just compensation, *and* that just compensation is calculated in accordance with the just compensation requirements set forth in the Act. ECF #26, pp. 10-11. If just this one clause is considered, CBS's interpretation thereof would not be without some merit, as it is not entirely unreasonable to view the phrase "in accordance with the requirements of the State Scenic Vistas Act" as applying to the immediately preceding phrase "without paying just compensation," as opposed to the sentence as a whole.

Even if the phrase "in accordance with the requirements of the State Scenic Vistas Act" is more properly applied to the words "without paying just compensation," however, this does not mean it is reasonable to assume that reference to the Act is merely for the purpose of stating how the parties are to go about calculating just compensation for future sign removals, regardless of the circumstances under which such removals occur. The Court finds though that applying that phrase to the clause as a whole more reasonably represents the objective intent of the parties. In Washington, as CBS points out, "words in a contract" generally are given "their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." Hearst, 154 Wn.2d at 504. Interpreting the above phrase as modifying the entire preceding clause gives it its most ordinary and usual meaning, and also is much more in line with findings and rulings set forth both in Judge Leighton's partial summary judgment order and the Stipulation and Order of Dismissal.

As noted previously, in ascertaining the parties' intent as objectively manifested the Court must not only consider the particular words at issue, but also must "look at the contract as a whole, the subject matter and objective of the contract, [and] the circumstances under which the contract was made," as well as "the reasonableness of the respective interpretations advanced by the parties." Butler, 67 Wn. App. at 698. Under such further analysis, CBS's interpretation is

ORDER - 12

1    not reasonable, and therefore cannot be adopted. First, the Stipulation and Order of Dismissal

2    clearly stems from Judge Leigton's partial summary judgment order (see Viacom Outdoor, Case

3    No. 3:03-cv-05023-RBL, ECF #30, p. 1), and thus must be viewed in light of the findings and

4    rulings contained therein. As noted by Judge Leighton, "[t]he single issue" presented for the

5    Court to decide in regard to the summary judgment motion, was whether the County "may

6    require the removal of [CBS's] sign under Ordinance 694 without paying 'just compensation' as

7    required by the provisions of the Scenic Vistas Act." Id., ECF #26, p. 2.

8

9          In Viacom Outdoor, furthermore, the County issued an actual Order to Cease and Desist

10   requiring CBS to comply with Ordinance 694, effectively forcing CBS to remove the sign and

11   thus entitling it to just compensation under the Act. See id. at pp. 2-3. There is no indication in

12   the language of the Stipulation and Order of Dismissal itself or the underlying partial summary

13   judgment order that the parties or the Court intended to prohibit the County from seeking

14   removal of signs in other contexts, i.e., those situations where the County does not issue an order

15   seeking compliance with and therefore requiring removal of a sign under Ordinance 694. The

16   fact that the Stipulation and Order of Dismissal prohibits the County from in the future issuing

17   "orders" against CBS, strongly supports this conclusion. Id., ECF #30, p. 2. That language also is

18   in line with the wording of the Act itself, which expressly provides that "[j]ust compensation

19   shall be paid upon the removal of any existing sign *pursuant to the provisions of any resolution*

20   *or ordinance of any county*," thereby indicating the regulatory nature of the governmental

21   activity covered. RCW 47.42.107(1) (emphasis added).

22

23         CBS goes on to argue that reading the phrase "in accordance with the State Scenic Vistas

24   Act" in the Stipulation and Order of Dismissal as modifying the entire preceding clause would

25   render the phrase "without paying just compensation" meaningless, because when the County

26

ORDER - 13

1    "orders removal of a sign in accordance with the Act, it already is required by statute to pay just

2    compensation" under the Act. ECF #26, p. 11. In other words, such an interpretation "would

3    confer a right already granted to CBS" by the Act. Id. at pp. 11-12. It is true that courts "should

4    not adopt a contract interpretation that renders a term ineffective or meaningless." Cambridge

5    Townhomes, LLC v. Pacific Star Roofing, Inc., 166 Wn.2d 475, 487 (2009). But the Court finds

6    no merit to CBS's argument here.

7         The interpretation the Court has adopted does not give CBS any right that it already has.

8

9    Rather, it merely makes clear that should the County in the future issue any "orders" requiring

10   removal of CBS's existing signs, the County must pay just compensation as required by the Act.

11   In addition, CBS is entitled to just compensation under the Act only if the County actually orders

12   one of its existing signs to be removed. Nor do the cases cited by CBS help it in this regard. In

13   Butler, one party owned a fee simple interest in certain real property, and the court declined to

14   adopt a contract interpretation that granted that party a lesser interest in that property. See 67

15   Wn. App. at 698-99. In Barnes v. Spurch, 121 Wn. 338 (1922), one party had become "the

16   absolute owners" of part of a wall that was situated on their property, and therefore "had a right

17   to use it." Id. at 340. Accordingly, a subsequent agreement granting it the right to use that wall

18   "in fact granted them nothing they did not already possess," and thus the agreement failed "for

19   lack of consideration." Id. Neither case involves potential entitlement to future compensation,

20   and therefore both clearly are distinguishable on their facts.

21

22        CBS also makes much of the fact that the Stipulation and Order of Dismissal references

23

24   only two specific Act provisions, RCW 47.42.103 and RCW 42.47.107. The omission of the

25   more than 30 other statutory provisions and the failure to reference the Act "in its entirety," CBS

26   asserts, indicates there was no intent to limit the availability of just compensation only to those

ORDER - 14

removals that are subject to the Act's requirements. ECF #26, p. 11. First, the Stipulation and Order of Dismissal *does* reference the Act in its entirety, albeit by its title and not by reference to each individual statutory provision contained therein. Second, the mere fact that not all statutory provisions were cited – not surprisingly, given that there are more than 30 in all – does not alone evidence an intent to use the Act only as a means of calculating the amount of just compensation to be paid no matter the circumstances of the removal. Third, as the County points out, RCW 47.42.103 and RCW 47.42.107 both state that just compensation is to be paid upon the removal of a sign as required by RCW 47.42.102, which in turn provides that just compensation "shall be paid upon the removal of any sign (*pursuant to the provisions of chapter 47.42 RCW*)." RCW 42.27.102(1) (emphasis added). This argument thus lacks merit as well.

II.      The County Did Not Demand Removal Under the Scenic Vistas Act

CBS next argues that even if the Stipulation and Order of Dismissal does not apply, the County must pay just compensation, because it in fact is demanding removal of the billboards pursuant to the Act. Specifically, CBS asserts (1) the Act does not differentiate between circumstances where a sign is ordered removed pursuant to a county resolution or ordinance, and those where a sign is removed for more than one reason, including pursuant to a county resolution or ordinance, and (2) one of the County's Commissioners, Howard Doherty, and one of its employees, Richard James, admitted in their depositions that one of the County's primary purposes for demanding the billboards' removal was to comply with its sign requirements. As pointed out by the County, however, Mr. James did not have decision-making authority in regard to renewal of the leases. See ECF #25, pp 5-6, ¶¶ 14-15. Second, while Mr. Doherty may have felt the sign requirements were a primary reason for why *he* did not want to see the leases renewed, there is no evidence the County Commissioners actually relied on that reason as a basis

ORDER - 15

for deciding to not renew them. <u>See</u> ECF #27, Exhibit J, 30:24-31:12. Indeed, the opposite seems to be true according to the letter the County Commissioners sent CBS in late June 2011. <u>See</u> ECF #24-7 ("We are unable to reverse our decision to cancel the billboard leases on the [Property] *due to the need to utilize this site for wetland mitigation*.") (emphasis added). CBS itself appears to also have recognized this, as internal email correspondence from Casey Gray, its Real Estate & Operations Manager, reveals. <u>See</u> ECF #24-8.[4]

As discussed above, furthermore, there is no evidence the County purchased the Property for any purpose other than wetland mitigation, and that is the reason the County consistently has given for why it had decided not to renew the leases. CBS points to a document titled "AGENDA ITEM SUMMARY" submitted in advance of an early May 2011 work session held by the County Commissioners, "in which the County Public Works Department sought direction 'on complying with County Goals, Policies and Ordinances guidance regarding commercial signs located on property owned by the county.'" ECF #26, p. 13 (quoting ECF #27, Exhibit Q). But again that excerpt fails to show either the County Commissioners themselves or anyone else with the authority to act on behalf of the County actually based the decision not to renew the leases on the County's sign requirements as opposed to its wetland mitigation needs. Nor does the excerpt of the transcription of proceedings for that work session, which merely reveals that an unidentified male individual felt that the County Commissioners should consider the issue of compliance with the County's sign requirements in its decision as to whether or not to renew the

---

[4] On June 10, 2011, in one email Mr. Gray wrote in response to a question from defendant's Vice Present of Real Estate as to whether the County's cancellation of the leases was a taking:

> No . . . They have had long term plans to extend the water mitigation area in this part of the county. Our lease expires on 06/31 and they are giving us an extra month to takedown. They have been waiting to do the project until the leases expired. . . .

<u>Id.</u>

ORDER - 16

1   leases. See ECF #27, Exhibit R.

2          Despite this lack of support for the assertion that a primary reason the County decided not

3   to renew the leases was compliance with its sign requirements, CBS argues the "purported

4   wetland basis for removing the billboards does not withstand factual scrutiny." ECF #26, p. 14.

5   As evidence for this, CBS asserts the billboards do not reside within any of the actual wetland

6   mitigation areas, and the County does not have any concrete plans for turning all of the Property

7   into a wetland. But as noted above, invasive weeds have been a particular concern for the County

8   in the area of the billboards. Interestingly, CBS argues both that employees for the County did

9   not know of the weed issue until after removal of the billboards was requested, and that other

10  employees for the County felt that issue had improved since at least 2009. But as noted above,

11  the County was well aware of the problem for many years prior to 2011, and while there may

12  have been some improvement in 2009, the noxious weed issue has continued to persist, including

13  until as late as the early August 2014. See ECF #24-12.

14

15         The County argues that because it sought removal of the billboards after the Leases had

16  expired, CBS is not entitled to just compensation under the Act. CBS does not disagree that the

17  County "may exercise its business powers very much in the same way as a private individual."

18  City of Tacoma v. Taxpayers of Tacoma, 108 Wn.2d 679, 694 (1987) (quoting PUD 1 v.

19  Newport, 38 Wash.2d 221, 227 (1951)); see also Hite v. Pub. Util. Dist. No. 2, 112 Wn.2d 456,

20  459 (1989). "When entering into a contract in a proprietary, as opposed to a governmental,

21  capacity," therefore, the County "stands on the same footing as a similarly situated private

22  party." Burns v. City of Seattle, 161 Wn.2d 129, 155 (2007); see also Hite, 112 Wn.2d at 459. A

23  local government "acts in a proprietary capacity 'when it engages in a business-like venture as

24  contrasted with a governmental function.'" Moore v. Wayman, 85 Wn. App. 710, 715-16 (1997)

25

26

ORDER - 17

(quoting <u>Hoffer v. State</u>, 110 Wn.2d 415, 422 (1988) (citing Black's Law Dictionary 1097 (5th ed. 1979)).

"It is the accepted rule," furthermore, that the County "acts in its proprietary capacity when it undertakes to dispose of public lands." <u>Strand v. State</u>, 16 Wn.2d 107, 117 (1943). In addition, when it becomes a party to a contract, the County "has the rights and assumes the responsibilities of an individual in a similar position." <u>State v. Horr</u>, 165 Minn. 1, 4 (1925) ("When the state comes into a court asserting a property or pecuniary right, it occupies the position of any and every other suitor. 'Its rights are precisely the same; no greater, no less.'") (quoting <u>Mountain Copper Co. v. United States</u>, 142 F. 625; <u>Denver & R. G. R. Co. v. United States</u>, 241 F. 614). Washington courts, furthermore, "have consistently recognized that 'the right to possess, make use or dispose of, and exclude others from property,' are 'fundamental attribute[s] of property ownership.'" <u>Manufactured Housing Communities of Washington v. State</u>, 142 Wn.2d 347, 364 (2000) (quoting <u>Guimont v. Clarke</u>, 121 Wash.2d 586, 595 (1993).

CBS also does not contest the County's right to dispose of the Leases in its proprietary capacity. CBS argues, however, that in doing so the County still must abide by the terms of the Stipulation and Order of Dismissal. But as discussed above, those terms do not apply here. CBS further argues that "[b]ecause its proprietary decision is also taken in accordance with the County's ordinances and resolutions concerning the removal of billboards," the County must comply with the Act as well. ECF #26, p. 15. As also discussed above, though, the County did not terminate the leases because of its sign requirements, but rather did so for the purpose of protecting the wetland mitigation status of the Property. Accordingly, there was no obligation on the County's part to comply with the Act.[5]

---

[5] The Court does agree with CBS, however, that payment of just compensation under the Act is not dependent on

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

II.    There Has Been No Taking or Inverse Condemnation

CBS argues the County's demand that it remove the billboards constitutes a taking of its property without just compensation under the United States and Washington State Constitutions, and therefore it is entitled to just compensation under an inverse condemnation claim. An inverse condemnation claim is "an action alleging a governmental 'taking,' brought to recover the value of property which has been appropriated in fact, but with no formal exercise of power of eminent domain." Phillips v. King County, 136 Wn.2d 946, 957 (1998) (citations omitted). The party asserting such a claim must establish that there has been: "(1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings." Id.

"Any governmental activity that invades or interferes with the right to use and enjoy property is a taking." Showalter v. City of Cheney, 118 Wn. App. 543, 549 (2003) ("The right to compensation is determined by asking whether the governmental action deprived the property owner of a valuable right."). Thus, "[t]here can be no inverse condemnation if no property right exists." Id. (quoting Granite Beach Holdings, L.L.C. v. Dep't of Natural Res., 103 Wash.App. 186, 205 (2000))). A property right "vests when it become[s] fixed and absolute and is no longer dependent on any contingency." Robroy Land Co., Inc. v. Prather, 95 Wn.2d 66, 69 (1980). "Generally, a lease is a conveyance of a limited estate for a limited term with conditions attached." Resident Action Council v. Seattle Housing Authority, 162 Wn.2d 773, 778 (2008).

The "mere expectation of renewal of an interest in property is not a property right." In re Harrell, 73 F.3d 218, 219 (9th Cir. 1996); see also Webb's Fabulous Pharmacies, Inc. v.

possession of a compensable leasehold interest in the Property itself, given that the Act expressly provides that just compensation for removal of any sign "shall be paid for . . . The taking from the owner of [any] sign, display, or device of all right, title, leasehold, and interest in such sign, display or device," and not just the property upon which that sign, display or device is located. RCW 47.42.102(2). Regardless, CBS is not entitled just compensation under the ACT for the other reasons discussed above.

ORDER - 19

1  Beckwith, 449 U.S. 155, 161 (1980) ("[A] mere unilateral expectation or an abstract need is not a

2  property interest entitled to protection."); Clear Channel Outdoor v. Seattle Popular Monorail

3  Authority, 136 Wn. App. 781, 784 (2007) (to be protected, property interest "must be something

4  more than a mere unilateral expectation of continued rights or benefits") (citing Ruckelshous v.

5  Monsanto Co., 467 U.S. 986, 1005 (1984)). see also Prather, 95 Wn.2d at 71 ("[I]n an ordinary

6  option contract, until the option is exercised, the optionee acquires no equitable estate or interest

7  in the optioned land.").

8

9      Once a leasehold interest has expired, "any expectancy of renewal" the lessee has in that

10  interest "is noncompensable." Whiteco Industries, Inc. v. City of Tucson, 168 Ariz. 257, 258-59

11  (1990) (citing United States v. Petty Motor Co., 327 U.S. 372 (1946)). Thus, under a month-to-

12  month lease because the lessor "has the right to terminate" the lease "on a month's notice," the

13  interest the lessee has in continuing the lease is "a mere unilateral expectation," and therefore

14  "no property interest that entitles the [lessee] to compensation" is created thereby. Clear Channel

15  Outdoor, 136 Wn. App. At 784. As the Ninth Circuit has succinctly explained:

16

17          A tenant's right of renewal of a lease refers to a legal right, and this exists
           only when the lease expressly grants to the tenant the option to renew the
18          lease at the end of its term. A mere expectation, or even probability, that the
           lease will be renewed based upon past practice and present good relations
19          between landlord and tenant, is not a legal right of renewal. It is nothing more
           than a speculation on chance.
20

21  In re Harrell, 73 F.3d at 220 (citation omitted). Rather, compensation for the loss of a leasehold

22  interest "is limited to compensation for the unexpired portion of the tenancy." Whiteco, 168

23  Ariz. at 258-59 (1990).

24      CBS does not argue that the County did not properly terminate the leases in accordance

25  with the terms of the lease agreements, and indeed internal email correspondence shows that it

26

ORDER - 20

agreed the County properly did so. See ECF #24-8.[6] Rather, CBS again argues the County could not terminate the leases without first paying just compensation pursuant to both the Stipulation and Order of Dismissal and the Act. Once more, as also discussed above, that argument has been rejected. Further, CBS has not shown that a taking has occurred for purposes of its inverse condemnation claim. There is no dispute that at the time the County provided its notice of non-renewal, the leases had converted to year-to-year leases that could be terminated at the option of either party upon 60 days notice, and that the County – "having succeeded to the title of the" lessor upon the purchase of the Property – provided that notice. At most, therefore, CBS had "a mere unilateral expectation" that the leases would continue, rather than a compensable protected property interest.[7] Clear Channel Outdoor, 136 Wn. App. at 784.

## CONCLUSION

Based on the foregoing discussion, the County's motion for summary judgment (ECF #23) hereby is GRANTED. CBS is not entitled to any compensable damages resulting from the County's decision to cancel the lease agreements or the County's demand for the removal of the billboards resulting from the cancellation of those agreements. Accordingly, as requested by the County in its complaint, CBS shall have 30 days from the date the Court has issued the judgment in this case in which to remove the billboards from the Property. Should CBS fail to remove the

---

[6] On June 10, 2011, Mr. Casey wrote that the County was "cancelling per the terms of the lease and the end of the term," and that "[t]hey gave us the required warning." Id.

[7] In its motion for summary judgment, the County further argues CBS is not entitled to compensation because the damages it alleges "are wholly speculative and unsupported." ECF #23, p. 17. Because the Court has found CBS is not entitled to just compensation under the Stipulation and Order of Dismissal or the Act or pursuant to its inverse condemnation claim, the issue of whether CBS's claimed damages can reasonably be estimated need not be addressed. The Court does note, however, that CBS's claim for damages rests largely on its assertion of lost profits. But as pointed out by the County, in addition to the requirement that they be "proven with reasonable certainty," lost profits "are properly recoverable as damages" by CBS only if they also "are the proximate result of [the County's] breach." Larsen v. Walton Plywood Co., 65 Wn.2d 1, 15 (1964) (noting as well a third requirement that lost profits must have been "within the contemplation of the parties at the time the contract was made"); see also Tiegs v. Watts, 135 Wn.2d 1, 17-18 (1998) ("certainty as to the fact that damage resulted from defendant's breach" is required). Here, though, no breach occurred. Rather, the County properly terminated the leases in accordance with their terms.

ORDER - 21

1   billboards within the time designated therefor, the County on its own may remove the billboards

2   and dispose of them in the manner it sees fit.

3          DATED this 23rd day of December, 2014.

4

5

6

7                                              Karen L. Strombom
                                               United States Magistrate Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 22